UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


COLBURN CLIFTON
GOODEN KELLY,

          Plaintiff,

v.

                                      Case No. 3:20-cv-1376-MMH-LLL

DEPUTY CODY JETT, et al.,

          Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Colburn Clifton Gooden Kelly, an inmate in the custody of the

Florida Department of Corrections (FDOC), initiated this action on December

26, 2018,[1] by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) with

exhibits (Docs. 1-1 through 1-9).[2] Kelly filed an Amended Complaint (AC; Doc.

30) with an index of the exhibits on August 3, 2021, pursuant to the mailbox

rule. In the AC, he asserts claims pursuant to 42 U.S.C. § 1983 against the

following Defendants: (1) Cody Jett, a patrol officer employed with the Clay

---

[1] In the Complaint (Doc. 1), an institutional date stamp reflects that Kelly
provided the Complaint to Franklin Correctional Institution officials for mailing on
December 26, 2018, almost two years before December 7, 2020, when the Clerk
received and filed the Complaint. See Complaint at 16; Doc. 7.
[2] For purposes of reference to pleadings and exhibits, the Court will cite the
document page numbers assigned by the Court's electronic docketing system.

County Sheriff's Office (CCSO) in Green Cove Springs, Florida; (2) CCSO Detective Jonathan Smith; and (3) Gregg Allen Williams, a Jacksonville-based self-employed lawyer who represented Kelly in his misdemeanor case (Clay County case number 2015-CT-001348, driving while license suspended or revoked (DWLSR)). He alleges that Defendants Jett and Smith violated his Fourth Amendment right to be free from unreasonable search and seizure, and that Defendant Williams violated his Sixth Amendment right to effective assistance of counsel. As relief, Kelly seeks monetary damages and injunctive relief.

This matter is before the Court on Defendants Jett and Smith's Motion to Dismiss (CCSO Motion; Doc. 34) and Defendant Williams' Motion to Dismiss (Motion; Doc. 50). The Court advised Kelly that granting a motion to dismiss would be an adjudication of the claim(s) that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 8). Kelly filed responses in opposition to the Motions. See Response to Defendants Cody Jett and Jonathan Smith's Motion to Dismiss (Doc. 53; Response); Reply to Defendant Gregg Williams' and Adopting Previous Arguments in Plaintiff's Initial Reply to Gregg Williams' Initial Motion to Dismiss (Doc. 54; Reply). Defendants' Motions are ripe for review.

2

## II. Plaintiff's Allegations[3]

In the AC, Kelly asserts that Defendants Jett and Smith violated his Fourth Amendment right when Jett "unlawfully extended a seizure without probable cause" and Smith arrested him for DWLSR on August 22, 2015. AC at 4. Additionally, he states that Defendant Williams violated his Sixth Amendment right because Williams was ineffective when he failed to challenge the unlawful arrest during the state-court suppression hearing on October 5, 2015. AC at 4. Id. As to the specific underlying facts supporting his Fourth Amendment claim, Kelly asserts that, on August 22, 2015, Jett received dispatched information (originally from an anonymous caller) that Heather McDonald had an active warrant for violation of probation on a heroin possession charge, and that she would be in a red rental car (driven by a black male possessing a firearm and storing heroin inside the car) at the McDonalds on Blanding Boulevard. Id. at 5 (citing Doc. 1-1 at 10).[4] Kelly states that Jett recognized Heather as she stood outside the car's passenger side and that he

---

[3] The AC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the AC and may differ from those that ultimately can be proved.

[4] Kelly quotes portions of Jett's testimony from the suppression hearings in Kelly's DWLSR case, see Doc. 1-1, and his felony drug cases (case numbers 2015-CF-1203 and 2015-CF-1204), see Doc. 1-2.

saw Kelly as he sat in the driver's seat talking to another individual through the window. AC at 5 (citing Doc. 1-1 at 12). According to Kelly, when Jett walked towards the car, Kelly joined Heather and walked away from Jett towards McDonalds. AC at 5. He asserts that when Jett "positively identified" Heather, he asked Heather and Kelly to halt, keep their hands out of their pockets, and sit on the curb. Id.; Doc. 1-1 at 13. Kelly maintains that he and Heather complied with Jett's directives and sat on the curb. AC at 5. He states that ten seconds later Heather fled about fifteen to twenty feet away where Jett tackled her to the ground. AC at 5-6; Doc. 1-1 at 13.

Next, Kelly quotes Jett's testimony from the suppression hearing.

> While I'm trying to restrain [Heather] as well as get on the radio to get units there to assist me, I saw the defendant [(Kelly)] reaching in his pockets. He had both hands actually in his pockets at that time. So due to the fact that the caller said he usually has a gun on him and for my safety, anybody digging in their pockets when something like that is going on is an extreme safety risk to me.

AC at 6 (quoting Doc. 1-1 at 13). Kelly avers that when Jett pointed his gun at him, he complied with Jett's directive to show his hands. AC at 6 (citing Doc. 1-2 at 56). He alleges that Jett kept his gun drawn until backup officers arrived. AC at 6.

4

According to Kelly, Jett arrived on the scene at 18:05, and radioed that he had taken custody of Kelly at 18:09 and Heather at 18:10. Id. (citing Doc. 1-3 at 7-8); Doc. 1-7 at 6. He avers that Jett put Heather in the back of the patrol car, handcuffed Kelly, and told Kelly to "sit back down on the curb." AC at 6. Kelly asserts that Jett "did not conduct any further investigation into the initial reason for detaining him." AC at 7. According to Kelly, Jett neither conducted a pat-down, asked for identification, nor inquired as to whether Kelly had any drugs or weapons. Id. Kelly asserts that he remained seated on the curb for forty-two (42) minutes until narcotics investigators arrived. AC at 6-7 (citing Doc. 1-2 at 69). He blames Jett for the extended seizure that "morphed" into an arrest without probable cause. AC at 7.

Kelly states that Defendant Smith arrived at 18:51, and arrested Kelly at 18:59 for DWLSR based on Smith's false belief that he had seen Kelly unlawfully driving earlier that evening. AC at 6-7 (citing Docs. 1-3 at 7; Doc. 1-4). He maintains that Smith "did not have prior knowledge of [Kelly]'s driving status" and identified Kelly after officers had searched and found Kelly's Florida identification card inside the car. AC at 6-7 (citing Docs. 1-1; 1-2 at 24; 1-5 at 3). Kelly states that Smith never communicated with Jett about detaining Kelly at the scene. AC at 7 (citing Doc. 1-1 at 27).

Kelly avers that he was released from the county jail on his own recognizance the next day, and arrested for felony drug trafficking on September 2, 2015, pursuant to an arrest warrant. AC at 7. He states that he filed motions to suppress in the DWLSR and felony drug cases, however, "the issue" before this Court was not litigated in the state courts. Id. at 8. According to Kelly, he pled "no contest in both cases," and is currently incarcerated for the drug convictions in case numbers 2015-CF-1203 and 2015-CF-1204. Id. He states that he is no longer in custody for the DWLSR conviction because he was sentenced to two days of time served. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds

6

upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam)

(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further,

the plaintiff must allege "enough facts to state a claim that is plausible on its

face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678

(citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal

quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that

"conclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts will not prevent dismissal") (internal citation and

quotations omitted). Indeed, "the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions[,]"

which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at

678, 680. Thus, in ruling on a motion to dismiss, the Court must determine

whether the complaint contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting

<u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less

7

stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of the Arguments

Defendants Jett and Smith request dismissal of Kelly's Fourth Amendment claims against them. CCSO Motion at 2-5. They assert that Kelly's civil rights lawsuit under 42 U.S.C. § 1983 for alleged Fourth Amendment violations is barred by (1) Florida's four-year statute of limitations, and (2) the holding in Heck v. Humphrey, 512 U.S. 477 (1994). Id. Additionally, Defendant Williams requests dismissal of Kelly's Sixth Amendment claim against him. Motion at 2-4. Williams asserts that (1) he was not a state actor under 42 U.S.C. § 1983; (2) Kelly's claim against him is barred by the statute of limitations; and (3) Kelly's claim is frivolous and fails to state a plausible claim against him. Id. In his Responses, Kelly contends that he states plausible Fourth and Sixth Amendment claims against Defendants and

that his claims are neither barred by the statute of limitations nor the holding

in Heck. See generally Response; Reply.

## V. Discussion

## A. Four-Year Statute of Limitations

Defendants Jett and Smith contend that Kelly's claims against them are

barred by Florida's four-year statute of limitations because the seizure and

arrest happened on August 22, 2015, and Kelly initiated this §1983 action more

than four years later on December 7, 2020. CCSO Motion at 2-3. Defendant

Williams similarly argues that Kelly's claim against him is barred by the

statute of limitations. Motion at 3. In his responses, Kelly argues that

Defendants failed to consider that he is entitled to the benefit of the prison

mailbox rule. Response at 2; Reply at 5. He points out that, although the

Court's docket shows a filing date of December 7, 2020, he filed the Complaint

almost two years before on December 26, 2018, pursuant to the mailbox rule.

Id.

It is well-settled that "all § 1983 suits must be brought within a State's

statute of limitations for personal-injury actions." Nance v. Ward, No. 21-439,

2022 WL 2251307, *8 (U.S. June 23, 2022) (citing Wallace v. Kato, 549 U.S.

384, 387 (2007)). In Florida, there is a four-year statute of limitations for claims

brought under 42 U.S.C. § 1983. See McGroarty v. Swearingen, 977 F.3d 1302,

9

1307 (11th Cir. 2020) ("Specifically, a plaintiff must commence a § 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act.") (internal quotations and citation omitted); see also City of Hialeah, Fla., v. Rojas, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002) (explaining the statute of limitations for a § 1983 action is borrowed from the forum state's personal injury statute of limitations, which in Florida is four years).

In the instant case, Defendants fail to account for the fact that Kelly was, and still is, entitled to the benefit of the prison mailbox rule, articulated in Houston v. Lack, 487 U.S. 266 (1988). Because a prisoner proceeding pro se has no control over the mailing of a pleading, courts deem it filed at the time the prisoner delivers it to prison officials for mailing. See Houston, 487 U.S. at 270-72. Thus, absent evidence to the contrary (such as prison logs or other records), Kelly's Complaint is deemed filed on the date it was delivered to prison authorities for mailing (December 26, 2018), see Complaint at 16, which is the same day he signed it, see id. at 11.[5] As such, Defendants Jett, Smith,

---

[5] The Court previously recognized the discrepancy between the two dates, see Order (Doc. 6), and Kelly explained that he "does not have any control of what happens to his documents once they are placed into the hands of prison officials," Doc. 7 at 1.

and Williams' Motions are due to be denied as to their assertions that Kelly's

claims against them are barred by the four-year statute of limitations.[6]

## B. Defendant Gregg Allen Williams

Defendant Williams also asserts that Kelly fails to state a plausible

claim against him under 42 U.S.C. § 1983 because he was not a state actor, but

rather was "a private attorney hired to represent [Kelly]." Motion at 2. Kelly

agrees that Williams was not acting under color of state law when the federal

constitutional violation allegedly occurred. Reply at 2, 4. Nevertheless, he

urges the Court to permit him to pursue his claim against Williams. Id. at 2-5

(citing Spencer v. Kemna, 523 U.S. 1 (1998)). He asserts that "he must use §

1983" as the vehicle to attack his DWLSR conviction because he cannot pursue

the claim in a federal habeas petition since he is no longer in custody.[7] Reply

at 3.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1)

the defendant deprived him of a right secured under the United States

---

[6] Defendants are not precluded from asserting a statute of limitations argument in a properly supported motion for summary judgment.

[7] Kelly challenged his DWLSR conviction in federal habeas actions filed in this Court. See Case Nos. 3:22-cv-417-MMH-PDB (dismissing the petition for lack of subject matter jurisdiction, stating that "Kelly is not in custody on the Clay County conviction and sentence that he is attempting to challenge in this case"); 3:22-cv-355-BJD-PDB (denying the petition, stating Kelly "cannot challenge his Clay County, County Court conviction and sentence for DWLSR by bringing a federal petition attacking an expired state sentence"); 3:21-cv-1253-HLA-LLL (dismissing the

Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)). To show a defendant acted under color of state law, the plaintiff must allege a sufficient relationship between the defendant and the state. See Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). To establish a sufficient relationship between the private-party defendant and the state, one of three conditions must be met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (alterations adopted and quotation marks omitted).

---

petition for Kelly to exhaust his state-court remedies); 3:21-cv-1100-HLA-MCR (dismissing the Petition to complete state-court proceedings). Kelly also challenged the DWLSR conviction in state court. See https://inquiry.clayclerk.com (last visited June 28, 2022).

Because § 1983 does not reach the conduct of private persons, and Kelly acknowledges that he has not alleged that Williams acted under color of state law, Kelly fails to state a plausible § 1983 claim against him. See Polk County v. Dodson, 454 U.S. 312, 318 n.7 (1981) (noting that a private attorney, even one appointed by the court, does not act under the color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional role of an attorney). As such, Williams' Motion is due to be granted.

### C. Defendants Cody Jett and Jonathan Smith

In the Motion to Dismiss, Defendants generally assert that Kelly's Fourth Amendment claim related to an unlawful arrest is barred by the holding in Heck v. Humphrey, 512 U.S. 477 (1994), as a judgment in Kelly's favor on the claim would cast doubt on the validity of Kelly's conviction, which has not otherwise been vacated, reversed, or overturned. CCSO at 4-5. In his response, Kelly argues that the holding in Heck does not bar his § 1983 action. Response at 2-8. He also asserts that Defendants "fail to extrapolate that [he] is not challenging his December 7, 2016 felony adjudication[,]" but instead challenges the unlawful misdemeanor arrest. Id. at 6.

In Heck, the United States Supreme Court "held that 'when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the

13

invalidity of his conviction or sentence; if it would, the complaint must be

dismissed unless the plaintiff can demonstrate that the conviction or sentence

has already been invalidated.'" Dyer v. Lee, 488 F.3d 876, 878-79 (11th Cir.

2007) (quoting Heck, 512 U.S. at 487). When the Supreme Court decided Heck,

its purpose was to close a loophole, which had placed § 1983 and the federal

habeas statute "'on a collision course.'" Id. at 880. In creating a bar to certain

§ 1983 actions, the Court reaffirmed the rule that "'habeas corpus is the

exclusive remedy for a state prisoner who challenges the fact or duration of his

confinement'" and it prevented plaintiffs from using § 1983 to avoid the

exhaustion requirements of habeas relief. Id. Thus, the purpose of the doctrine

is "to protect habeas corpus and promote finality and consistency." Id. at 884.

The Eleventh Circuit has explained:

> In Heck v. Humphrey, the Supreme Court
> sought to "avoid the problem inherent in two
> potentially conflicting resolutions arising out of the
> same set of events by foreclosing collateral attacks on
> convictions through the vehicle of a § 1983 suit."
> McClish v. Nugent, 483 F.3d 1231, 1250 (11th Cir.
> 2007). Thus, Heck bars a state prisoner's suit seeking
> damages under § 1983 when success "would
> necessarily imply the invalidity of his conviction or
> sentence." 512 U.S. at 487, 114 S.Ct. 2364. When
> "judgment in favor of a prisoner in a § 1983 case would
> have this effect," the district court "must dismiss the
> complaint unless the prisoner can show that the
> related state conviction has already been invalidated."

14

Sconiers, 946 F.3d at 1268.[8] The "rule is based on the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Henley v. Payne, 945 F.3d 1320, 1327 (11th Cir. 2019) (quotation omitted). But "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Heck, 512 U.S. at 487, 114 S.Ct. 2364 (emphasis in original).

Our Court's Heck inquiry sounds in theoretical possibility. See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008). We first explicated the proper analysis in Dyer v. Lee. There, we explained the concept of "logical necessity," which "is at the heart of the Heck opinion." Dyer, 488 F.3d at 879. This "emphasis on logical necessity," we said, was "a result of the Court's underlying concern in Heck: that § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254, were 'on a collision course.'" Id. at 880 (quoting Heck, 512 U.S. at 492, 114 S.Ct. 2364 (Souter, J., concurring)). That "concern simply does not arise unless there is a necessary logical connection between a successful § 1983 suit and the negation of the underlying conviction." Id. (emphasis in original). Otherwise, there is no "specter of an end-run around habeas," nor is there any "problem of two inconsistent judgments arising out of the same set of facts." Id.

Thus, we held in Dyer that "for Heck to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." Id. at 884. "In other words, as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not Heck-barred." Id. at 879-80

---

[8] Sconiers v. Lockhart, 946 F.3d 1256 (11th Cir. 2020).

> (emphasis added). In this Circuit, we ask whether "it is possible that the facts could allow a successful § 1983 suit and the underlying conviction both to stand without contradicting each other." Id. at 881 (emphasis added). Heck does not stand in the way of a § 1983 suit if, following the suit's success, "there would still exist a construction of the facts that would allow the underlying conviction to stand." Id. at 880. We reaffirmed this understanding in Dixon v. Hodges, 887 F.3d 1235, 1238 (11th Cir. 2018) (per curiam) ("As long as it is possible that a § 1983 suit would not negate the underlying punishment, then the suit is not Heck-barred." (alterations adopted and emphasis added) (quotation omitted)). Most recently, in Sconiers v. Lockhart, we explained that "when the facts required for a prisoner to prove his § 1983 case do not necessarily logically contradict the essential facts underlying the prisoner's conviction, Heck does not bar the § 1983 action from proceeding." 946 F.3d at 1268.

Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192-93 (11th Cir. 2020). Consequently, to be barred, there must be a "logical connection between a successful § 1983 suit and the negation of the underlying conviction." Dyer, 488 F.3d at 880. Therefore, the application of Heck requires a close examination of the facts. See Dyer, 488 F.3d at 883.

At this stage of the case – where the allegations in the Amended Complaint must be taken as true and not all of the facts have been placed before the Court – the Court is unable to conclude that Kelly's Fourth Amendment claims against Defendants and the related convictions are

16

logically contradictory and that dismissal of the Amended Complaint is warranted. Neither the exact sequence of the events (and how they relate to the misdemeanor DWLSR conviction and felony drug convictions) nor the facts underlying Kelly's convictions have been established. Additionally, it is possible Kelly's alleged extended seizure may not have been part of the underlying misdemeanor conviction, but instead related to the felony convictions. Therefore, the Court declines to dismiss Kelly's Fourth Amendment claims at this posture without allowing him the opportunity to prove the claims under § 1983, which he has alleged.

Nevertheless, while Kelly's claims will not be dismissed based on Heck at this motion-to-dismiss stage of the proceedings, the Court takes this opportunity to caution Kelly that he may not challenge the facts underlying his convictions or the duration of his incarceration in this civil rights action. See Willingham v. Loughnan, 261 F.3d 1178, 1183 (11th Cir. 2001) (citing Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411, 420 (1980) (stating rules of collateral estoppel apply to section 1983 suits)), vacating judgment on other grounds, 537 U.S. 801 (2002); For purposes of this action, those facts will be taken as true, and Kelly is estopped from challenging them. He will not be permitted to attempt to disprove those facts that formed the basis for his

17

convictions. See id. As such, he may withdraw one or both claims if he decides to do so.

To the extent Kelly requests that the Court treat this proceeding as a habeas case, see AC at 9, his request will be denied. Additionally, the Court recognizes that, after discovery and further development of the record, it may be clear that Kelly's claims only succeed if he invalidates his convictions. Thus, while the Court will allow the case to proceed at this juncture, Defendants are not precluded from challenging Kelly's claims in a properly supported motion for summary judgment based on the contention that they are barred by the holding in Heck.

In consideration of the foregoing, it is now

**ORDERED**:

1. Defendants Jett and Smith's Motion to Dismiss (Doc. 34) is **DENIED**.

2. Defendant Williams' Motion to Dismiss (Doc. 50) is **DENIED in part and GRANTED in part.**

3. Kelly's request that the Court treat this proceeding as a habeas case, see AC at 9, is **DENIED**.

18

4.     **No later than August 17, 2022**, Kelly must notify the Court as to whether he intends to proceed on his Fourth Amendment claims against Defendants Jett and Smith.

5.     Defendants Jett and Smith shall answer the Amended Complaint **no later than August 31, 2022**. Upon the filing of Defendants' Answers, the Court, by separate Order, will set deadlines for discovery and the filing of dispositive motions.

6.     The Court **directs the Clerk** to (1) terminate Gregg Allen Williams as a Defendant in the case, and (2) make the appropriate entry on the docket to reflect the termination of Williams.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-1 6/28
c:
Colburn Clifton Gooden Kelly, FDOC #J49515
Counsel of Record

19