UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COLBURN CLIFTON GOODEN KELLY,

      Plaintiff,

v.                            Case No. 3:20-cv-1376-MMH-LLL

DEPUTY CODY JETT, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Colburn Clifton Gooden Kelly, an inmate of the Florida penal system, initiated this action by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1) with exhibits (Docs. 1-1 through 1-9).[1] Kelly filed an Amended Complaint (AC; Doc. 30) with exhibits[2] on August 3, 2021.[3] In the AC, Kelly asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Cody Jett (Deputy Jett), a patrol officer employed with the Clay County Sheriff's Office (CCSO) in Green Cove Springs, Florida; and (2) CCSO

_____

[1] For all documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] In the AC, Kelly incorporated the exhibits previously submitted with his Complaint. See AC at 1.

[3] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

1

Detective Jonathan Smith (Detective Smith).[4] Kelly alleges that Defendants violated his Fourth Amendment right to be free from unreasonable search and seizure. As relief, Kelly seeks monetary damages and injunctive relief.

Before the Court are cross-motions for summary judgment: (1) Defendants' Motion for Summary Judgment (Defendants' Motion; Doc. 67) with exhibits (Docs. 67-1 through 67-4); and (2) Kelly's "Amended Motion for Summary Judgment with Signed Oath" (Kelly's Motion; Doc. 69) with exhibits (Docs. 69-1 through 69-18).[5] Kelly filed a response in opposition to Defendants' Motion. See "Plaintiff's Declaration in Opposition to Defendant's [sic] Motion for Summary Judgment" (Doc. 79). Defendants also filed a response in opposition to Kelly's Motion (Defendants' Response; Doc. 73). The Motions are ripe for review.

## II. Background

In the AC, Kelly asserts that Defendants violated his Fourth Amendment right to be free from unreasonable search and seizure when Deputy Jett "unlawfully extended a seizure without probable cause" and

---

[4] The Court previously granted in part and denied in part Defendant Gregg Allen Williams' Motion to Dismiss (Doc. 50), which resulted in the dismissal of Kelly's claim against Williams. See Order (Doc. 55).

[5] The Court advised Kelly of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to Defendants' Motion. See Order (Doc. 8); Summary Judgment Notice (Doc. 66).

Detective Smith falsely arrested him for driving while license suspended or revoked (DWLSR) on August 22, 2015. AC at 4, 7. As a result of the August 22, 2015 encounter, the State of Florida (State) filed charges against Kelly in three state criminal proceedings (one misdemeanor and two felony cases).[6]

## A. Misdemeanor Case

On September 1, 2015, the State charged Kelly by information in Clay County Case Number 2015-CT-1348 with DWLSR in violation of Florida Statutes section 322.34(2)(b). See Doc. 69-8 at 2. Kelly filed a motion to suppress in the case. See Doc. 69-9. At an evidentiary hearing held on the motion, Defendants testified as follows regarding the events that transpired on August 22, 2015.

Detective Smith testified that he was working as a CCSO undercover narcotics detective on August 22, 2015. See Doc. 1-1 at 19. Shortly before 7:00 p.m. that evening, an undercover narcotics purchase took place in Clay County where Kelly was the target. Id. at 26, 29. Detective Smith witnessed the controlled purchase and observed Kelly drive away afterwards. Id. at 27. Detective Smith followed Kelly's vehicle for two to three minutes, during which he observed Kelly being very animated and waving his arms around while

---

[6] The Court previously granted Kelly's motion to take judicial notice of the state-court dockets in the misdemeanor and felony cases. See Docs. 10, 12. The Court also notes that the parties submitted numerous filings from the state criminal proceedings in support of their respective summary judgment Motions.

driving. Id. at 20-22. Detective Smith stopped following Kelly after Kelly turned into a neighborhood. Id. at 22.

Approximately seven to ten minutes later, CCSO dispatched a call for service based on information from an anonymous caller regarding a female named Heather McDonald (Heather) who had an active warrant for violation of probation on a heroin possession charge. Id. at 9-10, 26. Deputy Jett was on patrol that evening and responded to the call for service after verifying that Heather was on CCSO's active warrant list. Id. at 8, 10. Deputy Jett testified that the dispatched information indicated Heather was "going to be arriving at McDonalds [on Blanding Boulevard] in a red vehicle that was a rental car, that it was going to be driven by a black male, and that the male was going to have heroin inside of the vehicle and that he's also in possession of a firearm at all times." Id. at 10.

Upon arriving at the McDonald's, Deputy Jett spotted a car matching the description of the red rental vehicle. Id. at 11. He recognized Heather standing outside the vehicle's passenger side, and he observed a male sitting in the driver's seat talking to another individual through the driver's side window. Id. at 12. During the suppression hearing, Deputy Jett identified Kelly as the male he observed sitting in the driver's seat. Id. at 11-12.

As Deputy Jett began walking towards the vehicle, the individual standing outside the driver's window left on a bicycle and Kelly exited the

vehicle and joined Heather. Id. at 12. Kelly and Heather began walking away from Deputy Jett towards the McDonald's. Id. Deputy Jett testified that he called out Heather's name, at which point both she and Kelly turned to look at him. Id. at 13. Deputy Jett then asked Heather and Kelly to stop walking away and to sit down while keeping their hands out of their pockets. Id. Kelly and Heather sat down, but ten seconds later, Heather got up and attempted to flee on foot. Id. Deputy Jett chased after Heather and physically tackled her to the ground. Id. While trying to restrain Heather, Deputy Jett called for backup. Id. Deputy Jett then noticed Kelly, who was still sitting down, reach into his pockets. Id. Deputy Jett testified: "He had both hands actually in his pockets at that time. So due to the fact that the caller said [Kelly] usually has a gun on him and for my safety, . . . at this point, I was giving him commands to take his hands out of his pockets, put his hands up, while trying to take [Heather] into custody." Id.

Deputy Jett testified that he asked Heather to identify herself and placed her under arrest. Id. at 11-12. Deputy Jett did not ask Kelly to identify himself or provide his driver's license. Id. at 14. One of the backup officers who arrived on the scene to assist Deputy Jett was Detective Smith. Id. Upon arriving at the McDonald's, Detective Smith recognized Kelly and the red rental car as the same vehicle he observed Kelly driving earlier that evening. Id. at 22. Detective Smith obtained Kelly's license information and ran a search, which showed

that Kelly's driver's license was suspended. Id. at 22-23. Detective Smith then

placed Kelly under arrest for DWLSR. See Doc. 69-16.

The court denied Kelly's motion to suppress, finding:

> I do find that there was a law enforcement officer who personally
> observed [Kelly] driving on . . . August 22, 2015. I further find that
> within 10 to 12 minutes later, Deputy Jett approached a vehicle
> looking for Heather McDonald, and in fact identified her as having
> a warrant. I find that [Kelly] voluntarily exited his vehicle and
> walked away with Heather McDonald. . . . Deputy Jett called out
> for Heather McDonald, and both she and [Kelly] stopped, turned
> around. Deputy Jett made a lawful arrest of Heather McDonald,
> and in that process legally detained [Kelly] [b]ased upon his
> actions of attempting to stand up, reaching in his pocket, and the
> prior anonymous tip that he would have a firearm, which based
> upon all the other circumstances at that time would be reliable.
> And further, that Deputy Jett or other officers at his direction have
> the right to request and/or demand identification from [Kelly]. And
> finally, that [Kelly's] driver license was suspended. So based upon
> all of that, I do find that the stop and the arrest was legal and the
> motion to suppress is denied.

Id. at 31-33. After the court announced its ruling on the motion to suppress,

Kelly decided to enter an open plea of no contest to DWLSR that same day. Id.

at 33-34. The court conducted a plea colloquy, adjudicated Kelly guilty of

DWLSR, and sentenced him to two days in county jail with credit for time

served. Id. at 34-38; see also Doc. 69-8 at 3-4.

## B. Felony Cases

After obtaining a warrant to search the rental vehicle, officers found a

Nike box inside the vehicle containing, among other items, Kelly's Florida

driver's license and controlled substances. See Doc. 1-5 at 3-4. As a result of

6

the items seized in the search, Kelly was arrested on September 2, 2015,[7] and charged in Clay County Case Number 2015-CF-1203 with two counts of trafficking in morphine, hydromorphone, opium, heroin or their derivatives (counts one and two); possession with intent to sell, manufacture, or deliver cocaine (count three); and two counts of possession of controlled substances (counts four and five). See Doc. 67-3 at 3-4. At the time of his arrest, Kelly was in possession of illegal drugs. See Doc. 67-3 at 5. As a result, the State charged Kelly in Clay County Case Number 2015-CF-1204 with trafficking in cocaine (count one) and possession with intent to sell, manufacture, or deliver a controlled substance (count two). Id.

In case number 2015-CF-1203, Kelly moved to suppress "the [August 22, 2015] stop, seizure, statements, and detention of [Kelly], and any illegal narcotics or substances including drugs, pills, cocaine, heroin, monies, and anything else obtained from [Kelly], [the red] vehicle used by [Kelly], and [Kelly's] hotel room." See Doc. 67-3 at 43. After an evidentiary hearing, the court denied the motion to suppress, stating in pertinent part:

> Defendant argues that all evidence should be suppressed because he was seized and detained without a well-founded suspicion or probable cause of criminal activity. In particular, Defendant argues that the anonymous caller's information was

---

[7] After his arrest for DWLSR on August 22, 2015, Kelly was released from the county jail on his own recognizance the next day. See AC at 7. He was subsequently arrested on September 2, 2015, pursuant to the arrest warrant issued in case number 2015-CF-1203. See Doc. 1-5.

insufficient to establish a well-founded suspicion of criminal activity to detain him.

For investigatory stops, "a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." Popple v. State, 626 So. 2d 185, 186 (Fla. 1993) (citing § 901.151, Fla. Stat. (1991)). "Reasonable suspicion can develop as a result of direct observations by law enforcement or by information provided by third parties." State v. Bullock, 164 So. 3d 701, 704-05 (Fla. 5th DCA 2015). "In analyzing whether third-party information can provide the requisite reasonable suspicion, courts have looked to the reliability of the informant as well as the reliability of the information provided." D.P. v. State, 65 So. 3d 123, 127 (Fla. 3d DCA 2011). "In determining whether the informant or the information is reliable, the court must consider the totality of the circumstances." Bullock, 264 So. 3d at 705 (citing Alabama v. White, 496 U.S. 325 (1990)).

As an initial matter, the Court notes that in case number 2015-CT-1348, Defendant was charged with [DWLSR] based upon the events on August 22, 2015. In that case, Defendant filed a motion to suppress all statements made by him after he was detained, all observations of Defendant by law enforcement officers, and all other evidence obtained as a result of the arrest. The same two witnesses that testified at the evidentiary hearing on the motion to suppress in that case also testified at the evidentiary hearing in this case. That court found the following:

> A law enforcement officer personally observed Defendant driving on August 22, 2015. Deputy Jett approached a vehicle looking for Heather McDonald and identified her as having a warrant. Defendant voluntarily exited the vehicle and walked away with Heather McDonald. Deputy Jett called out to Heather McDonald, and she and Defendant turned around. Deputy Jett made a lawful arrest of Heather McDonald and in the process legally detained Defendant. The legal detention was based on Defendant's action of attempting to stand up, reach in his pockets, and the anonymous tip that Defendant

8

would have a firearm. Based upon all the other circumstances at the time, the anonymous tip was reliable. Deputy Jett or the other officers had a right to request or demand identification from Defendant. Further, it was determined that Defendant's driver's license was suspended.

Based upon these findings, Defendant's motion to suppress was denied. Defendant did not appeal that court's ruling.

Thus, it appears that the issues raised in the instant Motion have already been litigated between the parties by a court of competent jurisdiction. Therefore, the instant Motion can be denied on the basis that it is barred by collateral estoppel or res judicata. Nevertheless, upon the Court's own independent review of the facts, the Court finds Defendant's argument is without merit.

The anonymous caller stated that a drug transaction was going to occur at a McDonald's. The anonymous caller described the vehicle to look for, described the gender of the vehicle's occupants, provided the name Heather McDonald as one of the occupants of the vehicle, provided the fact that Heather McDonald had a warrant out against her, and gave description of the black male occupant of the vehicle.

Prior to his direct engagement with Defendant, Deputy Jett observed a vehicle matching the exact description given by the anonymous caller. Deputy Jett was able to verify that Heather McDonald had an active warrant for her arrest and observed Heather McDonald standing by the passenger's side of that vehicle. Deputy Jett observed Defendant exit the driver's side of the vehicle and recognized Defendant from the description given by the anonymous caller. Further, Deputy Jett observed a white male standing by the driver's side of the vehicle who "hopped" on his bicycle and left when Deputy Jett began to approach the vehicle.

Based on the totality of the circumstances and the accuracy of the anonymous caller's information, corroborated by Deputy Jett's observations, Deputy Jett had a right to briefly detain

Defendant. Further, after witnessing Defendant repeatedly dig into his gym shorts and being equipped with the knowledge that Defendant was usually armed, Deputy Jett had the right to further detain Defendant.

During this detainment, Detective Smith arrived on the scene. Detective Smith knew Defendant by name, knew Defendant's driver's license was suspended or revoked, and observed Defendant drive the vehicle matching the description given by the anonymous caller earlier that day. Detective Smith had probable cause to arrest Defendant and did arrest Defendant. Defendant was searched and a warrant[8] to search the vehicle was obtained. . . .

The Court finds that Defendant has failed to demonstrate that his rights were violated.

Doc. 67-3 at 45-48. Kelly filed a similar motion to suppress in case number 2015-CF-1204, which the court denied for the reasons stated in case number 2015-CF-1203. See id. at 62-63.

Kelly entered no contest pleas in both felony cases. See Doc. 67-3 at 50, 65. In case number 2015-CF-1203, the court sentenced Kelly to a twenty-five-year term of imprisonment as to count one, fifteen-year terms of imprisonment as to counts two and three, and five-year terms of imprisonment as to counts four and five, with all counts to run concurrently. Id. at 53-61. In case number 2015-CF-1204, the court sentenced Kelly to a twenty-five-year term of imprisonment as to count one and a fifteen-year term of imprisonment as to

---

[8] The court noted: "The warrant to search the vehicle has not been and is not being challenged." Doc. 67-3 at 48 n.3.

count two, with all counts to run concurrently with each other and with the sentence imposed in case number 2015-CF-1203. Id. at 68-74.

Kelly appealed his convictions in both felony cases to the First District Court of Appeal (First DCA). See Doc. 67-4 at 124; Doc. 67-3 at 77. On appeal, Kelly argued that: (1) his initial detention by Deputy Jett was unlawful, (2) the probable cause finding for the DWLSR arrest was premised on the unlawful initial detention, and (3) his due process rights were violated by Detective Smith's alleged contradictory testimony at the suppression hearings. See Doc. 67-4 at 141. On May 9, 2018, the First DCA per curiam affirmed Kelly's convictions and sentences in both felony cases. Doc. 67-3 at 77.

### C. State Postconviction Proceedings

Kelly pursued postconviction relief in all three cases. In the misdemeanor case, Kelly filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. See Doc. 9-3. In the motion, as supplemented, Kelly raised three claims of ineffective assistance of counsel, arguing that his counsel was ineffective when he: (1) advised Kelly to enter a no contest plea to DWLSR; (2) failed to depose Deputy Jett and Detective Smith; and (3) failed to conduct an adequate discovery investigation. Id. at 4-9. Following an evidentiary hearing, the court denied Kelly's Rule 3.850 motion on June 24, 2020. See Docs. 9-3. According to the state court docket, the First

DCA per curiam affirmed the denial of Kelly's Rule 3.850 motion on November 12, 2021.[9]

Kelly also filed a joint Rule 3.850 motion in his felony cases, arguing in relevant part that counsel was ineffective when he failed to: (1) adequately argue in the suppression motion that Kelly's statements on August 22, 2015 were involuntary and induced by threats and promises of leniency; (2) obtain a judicial determination on the issue of whether Kelly's statements were coerced; (3) argue that Kelly's detention constituted an unlawful de facto arrest; and (4) argue that the search warrant affidavit was defective. See Doc. 67-2 at 1-19. After an evidentiary hearing at which Kelly and his counsel testified, id. at 23-80, the court denied the Rule 3.850 motion on December 9, 2022, id. at 1-19.[10]

### D. Kelly's Allegations

In the AC and Kelly's Declaration in support of his Motion (Kelly Decl., Doc. 69 at 1-7), Kelly sets forth the following timeline of the encounter.[11] According to Kelly, Deputy Jett arrived at the McDonald's at 18:05, and

---

[9] https://inquiry.clayclerk.com/Home.aspx/Search (last visited Dec. 1, 2023).

[10] As of the date of this Order, Kelly's appeal of the denial of his Rule 3.850 motion in the felony cases remains pending. See State of Florida v. Colburn Clifton Gooden Kelly, Nos. 2015-CF-1203 and 2015-CF-1204, Notice of Appeal (Fla. 4th Cir. Ct. Feb. 16, 2023).

[11] Because the AC is a verified pleading, see AC at 17, the Court treats it as an affidavit for summary judgment purposes. United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties in the State of Ala., 941 F.2d 1428, 1444 n.35 (11th Cir. 1991) (en banc); see also 28 U.S.C. § 1746.

radioed that he had taken custody of Kelly at 18:09 and Heather at 18:10. AC at 6. He avers that Deputy Jett put Heather in the back of the patrol car, handcuffed Kelly, and told Kelly to "sit back down on the curb." Id. Kelly asserts that after Deputy Jett handcuffed him, he "did not conduct any further investigation into the initial reason for detaining him." AC at 7. According to Kelly, Deputy Jett neither conducted a pat-down, asked for identification, nor inquired as to whether Kelly had any drugs or weapons. Id. At 18:21, a K-9 unit arrived on the scene and alerted to the presence of narcotics in the rental vehicle. See Kelly Decl. at 2. According to Kelly, Deputy Jett did not request the K-9 unit. Id. Kelly asserts that he remained seated on the curb for forty-two (42) minutes until narcotics investigators arrived. AC at 6-7.

According to Kelly, Detective Smith arrived on the scene at 18:51, and arrested Kelly for DWLSR at 18:59. AC at 6. Kelly avers that Detective Smith was unaware of Kelly's driving status until officers executed the search warrant and found Kelly's identification card inside the vehicle. AC at 5-7; Kelly Decl. at 2. Kelly avers that Detective Smith never communicated with Deputy Jett about detaining Kelly at the scene. AC at 7.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[12] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for

---

[12] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." <u>Guevara v. NCL (Bahamas) Ltd.</u>, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted). Notably, the instant action is before the Court on cross-motions seeking summary judgment. "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." <u>T-Mobile S. LLC v. City of Jacksonville, Fla.</u>, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). Instead, applying the same principles, "the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." <u>Id.</u>

## IV. Summary of the Parties' Arguments

Defendants raise three arguments in their Motion. First, they argue that collateral estoppel bars Kelly's Fourth Amendment claims. <u>See</u> Defendants' Motion at 6-8. Second, Defendants contend the holding in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), bars Kelly's Fourth Amendment claims because a judgment for Kelly in this case would necessarily imply the invalidity of his DWLSR and felony drug convictions, which have not been vacated, reversed, or otherwise overturned.[13] <u>Id.</u> at 8-10. Third, Defendants assert they are entitled to qualified immunity. <u>Id.</u> at 10-13.

---

[13] The Court previously declined to dismiss Kelly's claims against Defendants under the holding in <u>Heck</u> at the motion-to-dismiss stage of the proceedings. <u>See</u> Doc. 55 (Order denying motion to dismiss and stating that "Defendants are not precluded from challenging Kelly's claims in a properly supported motion for summary judgment based on the contention that they are barred by the holding in <u>Heck</u>"). In their respective summary judgment Motions, the parties have renewed their arguments under <u>Heck</u>.

In his Motion, Kelly asserts that his § 1983 lawsuit is not barred by <u>Heck</u> or by collateral estoppel. <u>See</u> Kelly's Motion at 8-10, 23-24. Kelly further argues he is entitled to summary judgment on his Fourth Amendment claims against Defendants.[14] <u>See id.</u> at 10-22.

## V. Analysis

### A. Kelly's Fourth Amendment Claims are Barred by <u>Heck</u>

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law." <u>See</u> <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001). In <u>Heck</u>, the United States Supreme Court "held that 'when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" <u>Dyer v. Lee</u>, 488 F.3d 876, 878-79 (11th Cir. 2007) (quoting <u>Heck</u>, 512 U.S. at 487). The Eleventh Circuit has explained:

> [W]e held in <u>Dyer</u> that "for <u>Heck</u> to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." <u>Id.</u> at 884. "In other words, as long as it is possible that a § 1983 suit would not negate the underlying

---

[14] The Court notes that Kelly also raises arguments in the Motion concerning his claim against Defendant Williams. <u>See</u> Kelly's Motion at 22-24. Because the Court has already dismissed Kelly's claim against Defendant Williams, <u>see</u> Doc. 55 at 11-13, the Court will not consider Kelly's arguments as to that claim.

conviction, then the suit is not <u>Heck</u>-barred." <u>Id.</u> at 879-80 (emphasis added). In this Circuit, we ask whether "it is possible that the facts could allow a successful § 1983 suit and the underlying conviction both to stand without contradicting each other." <u>Id.</u> at 881 (emphasis added). <u>Heck</u> does not stand in the way of a § 1983 suit if, following the suit's success, "there would still exist a construction of the facts that would allow the underlying conviction to stand." <u>Id.</u> at 880. We reaffirmed this understanding in <u>Dixon v. Hodges</u>, 887 F.3d 1235, 1238 (11th Cir. 2018) (per curiam) ("As long as it is possible that a § 1983 suit would not negate the underlying punishment, then the suit is not <u>Heck</u>-barred." (alterations adopted and emphasis added) (quotation omitted)). Most recently, in <u>Sconiers v. Lockhart</u>, we explained that "when the facts required for a prisoner to prove his § 1983 case do not necessarily logically contradict the essential facts underlying the prisoner's conviction, <u>Heck</u> does not bar the § 1983 action from proceeding." 946 F.3d at 1268.

<u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192-93 (11th Cir. 2020).

As applied to § 1983 claims for a Fourth Amendment violation, the Supreme Court explained in <u>Heck</u> "that its holding would not necessarily preclude a Fourth Amendment claim of illegal search and seizure:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, . . . and especially harmless error, . . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful."

<u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 (11th Cir. 2003) (quoting <u>Heck</u>, 512 U.S. at 487 n.7 (citations omitted)). Thus, the Eleventh Circuit has held that

"[b]ecause an illegal search or arrest may be followed by a valid conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction." Hughes, 350 F.3d at 1160 (internal citation and footnote omitted). While "Heck does not generally bar such claims," id., it will "still preclude those [Fourth Amendment] claims that 'if successful, would necessarily imply the invalidity of the conviction because they would negate an element of the offense.'" Weaver v. Geiger, 294 F. App'x 529, 533 (11th Cir. 2008) (quoting Hughes, 350 F.3d at 1160 n. 2). "In order to determine whether such a negation would occur, we must look at both 'the claims raised under § 1983' and 'the specific offenses for which the § 1983 claimant was convicted.'" Id.; see also Vickers v. Donahue, 137 F. App'x 285, 290 (11th Cir. 2005) ("[N]ot all Fourth Amendment claims fit the exception to Heck, and courts must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted.") (internal quotation marks and citation omitted).

Kelly's Fourth Amendment claims in this § 1983 lawsuit are inextricably intertwined with the factual basis for his DWLSR and felony drug convictions. Though Kelly argues that he is only challenging his unlawful arrest for DWLSR and not his felony drug adjudications, the Court disagrees that such a division is possible for Heck purposes as the DWLSR conviction is derived from the same common nucleus of operative facts underlying Kelly's felony

drug convictions. See Henley v. Payne, 945 F.3d 1320, 1328 (11th Cir. 2019) (explaining that "Heck has no application if the plaintiff has not been convicted of an offense that derives from a common nucleus of operative fact with the offense underlying his § 1983 claim"). The DWLSR conviction and the felony drug convictions in 2015-CF-1203 all stem from the same traffic stop and seizure that Kelly claims is unlawful in this § 1983 lawsuit. That his DWLSR arrest and felony drug charges were adjudicated in separate state court proceedings rather than consolidated does not change the Court's analysis under Heck.[15] See Heck, 512 U.S. at 487 ("[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,[] in the absence of some other bar to the suit.") (footnote omitted).

---

[15] Because Kelly remains in custody for his felony drug convictions, the Court need not reach Kelly's argument that Heck should not apply to this § 1983 lawsuit because he has served his sentence for his DWLSR conviction. See Kelly's Motion at 8-10; see Topa v. Melendez, 739 F. App'x 516, 519 n.2 (11th Cir. 2018) ("A circuit split has developed regarding the application of Heck to situations where a claimant, who may no longer bring a habeas action, asserts a § 1983 complaint attacking a sentence or conviction. This circuit has not definitely answered the question.") (internal citations and quotation marks omitted). Because the DWLSR conviction and felony drug convictions in 2015-CF-1203 are inextricably intertwined as they stem from the same encounter, the custody issue discussed in Topa is not implicated. Further, while incarcerated on the felony drug convictions, Kelly has sought state postconviction relief in part on the basis that the DWLSR arrest was unlawful.

If Kelly succeeds in demonstrating in this § 1983 case that his seizure morphed into a de facto arrest without probable cause, it will necessarily imply the invalidity of his DWLSR and felony drug convictions. That is, Kelly's argument that there was no lawful basis to detain him after Heather was taken into custody at 18:10, if successful, would necessarily bear on the admissibility of all that followed – including the K-9 sniff, Kelly's admission that he was driving the vehicle, and his incriminating statements to officers regarding the controlled substances inside the vehicle. Further, even though the vehicle was searched pursuant to a search warrant, that search warrant affidavit was based on the K-9 alert and Kelly's statements.[16] See Doc. 67-4 at 100-01. Thus, because the evidence required to prosecute the DWLSR charge and the felony drug charges in 2015-CF-1203 came directly from a seizure that Kelly alleges violates the Fourth Amendment in this § 1983 lawsuit, any success in this case would necessarily imply the invalidity of his convictions. Accordingly, since Kelly's DWLSR and felony drug convictions remain in place, his Fourth Amendment claims are barred by Heck. See e.g., Clement v. McCarley, 708 F. App'x 585, 589 (11th Cir. 2017) ("Mr. Clement's false arrest claim was barred by Heck. His claim would clearly imply the invalidity of his convictions because

---

[16] Notably, the search warrant affidavit did not mention the anonymous caller (who had indicated there was heroin in the vehicle) or the controlled buy Detective Smith witnessed earlier that evening. See Doc. 67-4 at 100-01.

it is based on the assertion that there was no probable cause to believe he had committed the offense for which he was convicted."). While a false arrest claim does not necessarily implicate the <u>Heck</u> bar, on the facts before the Court, Kelly cannot prevail on this § 1983 claim without attacking the validity of his three related state court convictions.

Thus, for these reasons, Kelly's § 1983 claims against Deputy Jett and Detective Smith are due to be dismissed without prejudice. <u>See</u> <u>Petersen v. Overstreet</u>, 819 F. App'x 778, 779 (11th Cir. 2020) ("[C]ases barred by <u>Heck</u> . . . are typically dismissed without prejudice . . . .").

Accordingly, it is

**ORDERED:**

1.     Defendants' Motion for Summary Judgment (Doc. 67) is **GRANTED**.

2.     Kelly's Amended Motion for Summary Judgment with Signed Oath (Doc. 69) is **DENIED**.

3.     Kelly's Amended Complaint (Doc. 30) is **DISMISSED WITHOUT PREJUDICE**.

4.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of January, 2024.

MARCIA MORALES HOWARD
United States District Judge

Jax-10  12/12
C:     Colburn Clifton Gooden Kelly, #J49515
        Counsel of record

23